**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL T.,[1]                                              Case No. 2:22-cv-2148

        Plaintiff,                                    Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Michael T. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two closely related claims of error for this Court's review. As explained below, the ALJ's non-disability decision is supported by substantial evidence in the record as a whole and therefore is AFFIRMED.

**I.  Summary of Administrative Record**

On September 5, 2019, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on the date of his current application[3] based upon a combination of depression, anxiety, and multiple physical complaints including congestive heart failure, high blood pressure, back pain, plates and screws in his left leg, sleeping difficulty, and COPD. (Tr. 37-38, 87). After his application was denied initially

---

[1]Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).
[3]Plaintiff initially alleged an onset date of June 19, 2014, but amended that date at the hearing due to the administrative res judicata effect of prior applications. (*See* Tr. 37). Plaintiff's most recent unsuccessful application, prior to the application that underlies this judicial appeal, was denied on October 1, 2018. (Tr. 17; Tr, 59; *see also* Tr. 88).

1

and on reconsideration, Plaintiff requested an evidentiary hearing. On January 11, 2021, Plaintiff appeared telephonically with counsel and testified before Administrative Law Judge ("ALJ") Peter Beekman. A vocational expert also testified. (Tr. 34-55). On January 26, 2021, the ALJ issued an adverse decision. (Tr. 17-29).

Plaintiff has a limited education and was 48 at the time of the ALJ's decision. (*See* Tr. 27). He has not worked since 2003; therefore, he has no past relevant work for purposes of his application. (*Id.*; *see also* Tr. 62, 197). He lives with his wife, his mother, and two sons, ages 22 and 10. (Tr. 24).

In his decision, the ALJ determined that Plaintiff has the following severe impairments: "obesity, left ankle status post internal open reduction and internal fixation; mild spondylosis of the lumbar spine; personality disorder[]; chronic obstructive pulmonary disease; hypertension; depression…and anxiety." (Tr. 20). The ALJ found that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that he would be entitled to a presumption of disability. (*Id.*)

The ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, subject to the following non-exertional limitations:

> [T]he claimant can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; can occasionally stoop, kneel, crouch, and crawl; should avoid high concentrated exposure to heat; should avoid high concentrated exposure to smoke, fumes, pollutants, and dust; cannot perform complex tasks but can perform simple, routine tasks (meaning the claimant can possesses the basic mental aptitude to meet the demands of competitive, remunerative, unskilled work[)] including the abilities to on a sustained basis, understand, carry out, and remember simple work instructions; can respond appropriately to supervision, coworkers, and usual work situations and deal with changes in routine work settings; can focus attention on simple or routine work activities for at least two hours at a time and stay on task at a sustained rate such as initiating and performing a task that they understand and know how to do; can work at an appropriate and consistent pace; can complete tasks in a timely manner; can ignore or

2

avoid distractions while working; can change activities or work settings without being disruptive; can perform only low stress work (meaning no high production quotas or piece-rate work[)]; can have occasional interactions with coworkers (meaning limited to speaking, signaling, taking instructions, asking questions, and similar contact but no arbitration, negotiation, confrontation, or commercial deriving; and can never interact with the public[)].

(Tr. 22-23).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy, including the representative positions of inspector and hand packager, electronics worker, and assembler, electrical accessories. (Tr. 28). Therefore, the ALJ determined that Plaintiff was not under a disability through the date of his decision. (*Id*.) The Appeals Council denied Plaintiff's request for further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff does not dispute which impairments were severe, nor does he dispute the finding that none of his impairments were of "listing level" severity such that he was entitled to a presumption of disability. Instead, Plaintiff disputes the ALJ's physical RFC determination that he remains capable of performing a modified range of light work. Specifically, Plaintiff contends that the ALJ erred by failing to find that his cane was a necessary medical device that further reduced his physical RFC. However, the Court finds no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent

the applicant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the

4

claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a); 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. *See* 42 U.S.C. § 423(d)(1)(A).

## B.   Plaintiff's Claims of Error

In the case presented, ALJ Beekman found that Plaintiff retains the RFC to perform a limited range of light work, which would require "standing or walking, off and on, for [about] 6 hours of an 8-hour workday." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6; *see also* 20 C.F.R. § 416.967(b). Plaintiff argues that when assessing his RFC for light work, ALJ Beekman failed to adequately consider his cane use.[4] Plaintiff first argues that the ALJ erred when he failed to find that the cane was medically necessary, and then compounded that error by failing to incorporate the use of a cane

---

[4]The October 1, 2018 decision by ALJ Winfrey determined that Plaintiff was limited to sedentary work. (Tr. 74). However, ALJ Winfrey also did not find the use of a cane to be medically necessary.

into Plaintiff's RFC. Prior to discussing Plaintiff's two claims, the Court summarizes the relevant evidence pertaining to his alleged use of a cane.

### 1. Evidence Pertaining to Cane Use

Plaintiff has a remote history of an ankle fracture that was surgically repaired with stabilizing hardware; ALJ Beekman acknowledged that injury to be a severe impairment. Plaintiff also generally alleges chronic foot and/or ankle pain.[5] The ALJ summarized Plaintiff's subjective allegations as follows.

> The claimant endorsed difficulty walking with medication. The claimant testified that he uses a cane, has high blood pressure, and water retention. The claimant testified that the cane had been prescribed. The claimant testified that he uses the cane almost every day. The claimant testified that he uses the cane if he goes outside. The claimant testified that he keeps the cane by his bed. …The claimant testified that he has to elevate his legs. The claimant explained that his legs swell due to water retention….

(Tr. 23).

In evaluating Plaintiff's level of impairment, ALJ Beekman noted the absence of any evidence of record concerning any limitations in his range of motion in his ankle or leg, and additional lack of evidence that he could not ambulate effectively. (Tr. 20-21). The ALJ further noted only "mild" symptoms from his lumbar spine impairment with no muscle weakness or motor loss that would have the potential to impact Plaintiff's mobility. (Tr. 21). The ALJ emphasized that objective imaging of the ankle dated July 2, 2018 "was unremarkable other than showing a prior open reduction and internal fixation of a fibular fracture." (Tr. 24). Similarly, although a single examination of the left ankle on September

---

[5]Relevant to allegations of chronic foot pain, ALJ Winfrey found several severe impairments in the October 1, 2018 decision that were not found by ALJ Beekman in the decision currently on appeal. For example, ALJ Winfrey's decision found "plantar fasciitis" in Plaintiff's right foot to be severe, in addition to left foot hammertoes and mild osteoarthritis of "the first metatarsophalangeal joints" in both feet. (Tr. 62). Plaintiff does not challenge the lack of any such Step 2 findings by ALJ Beekman.

10, 2018 "showed pain with range of motion," that record predated the most recent non-disability finding, and predated the current alleged disability period by approximately a year.[6] In contrast, ALJ Beekman cited to several examinations within the relevant disability period that were normal.[7] (*Id.*)

Plaintiff cites to no objective evidence during the relevant period in which any physician found any abnormalities that would support a finding that he medically required the use of a cane. In lieu of such objective evidence, Plaintiff cites to a subjective symptom checklist he completed at an exam on September 18, 2018 in which he describes foot pain.[8] He also cites to his hearing testimony that he consistently uses a cane. (Tr. 385-386). But the ALJ significantly discounted all of Plaintiff's subjective complaints after finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," and that "the record does not support the alleged level of limitation." (Tr. 24). In particular, the ALJ singled out Plaintiff's "allegations regarding problems walking, using a cane, and needing to elevate the feet" as "not supported by the record." (*Id.*) Notably, Plaintiff does not challenge the ALJ's adverse analysis of his subjective symptoms.[9]

---

[6]SSI benefits are payable only as of the month after the month of application. 20 C.F.R. § 416.335. Thus, the primary period at issue begins with Plaintiff's date of application in September 2019, as there can be no retroactivity of benefits under SSI. *Id.*

[7]The recent records cited by ALJ Beekman do not refer to use of an assistive device. ALJ Winfrey, in his October 2018 decision, similarly discussed the lack of records to support Plaintiff's allegations of cane use. Consistent with ALJ Beekman's analysis, ALJ Winfrey noted that records showed that Plaintiff "repeatedly had intact and normal gait and station, and no ambulatory aid usage noted." (Tr. 71) The prior ALJ also noted that Plaintiff presented to examining physicians "as not using or denying requiring a cane and walking boot." (Tr. 72-74).

[8]Again, the date of the subjective symptom questionnaire predates the unappealed October 1, 2018 non-disability decision issued by ALJ Winfrey, and predates the current disability period by nearly a year.

[9]In addition to pointing out inconsistencies between Plaintiff's subjective complaints and the medical evidence, the ALJ cited to his daily activities. For example, Plaintiff reported regularly going out to eat pre-Covid, as well as hobbies of building and flying remote-controlled planes and playing music with friends.

Returning to the medical record, Plaintiff chiefly relies upon a prescription for a cane written at Plaintiff's request by a primary care provider on January 27, 2020. However, the cited note contains no review or comment by the physician that reflects medical necessity. (Tr. 24, citing Tr. 430). Instead, the note states that Plaintiff's request for a new prescription was based upon his alleged use of a cane "for 5 years now off and on when he is having back issues" and his report that his prior cane was "flimsy." (*Id.*)

Two state agency medical consultants offered opinion evidence at the initial and reconsideration levels. Both opined that Plaintiff was capable of performing work at the light exertional level. Neither found a cane to be medically necessary, and the ALJ found their opinions to be persuasive. (Tr. 26). Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence.

The last piece of evidence relevant to cane use is the vocational expert's testimony. The ALJ adopted an RFC consistent with the first hypothetical posed to the vocational expert, and the VE testified that such a hypothetical individual could continue to work at the light exertional level in a significant number of jobs in the national economy. However, the VE also testified that adding limitations to restrict standing/walking to no more than four hours per day, or even to no more than two hours per day, would not preclude the jobs that such a hypothetical claimant could perform, nor would it erode the number of those jobs available. (Tr. 52). The VE explained that all three jobs could be performed "sitting or standing" and cited research and personal experience with clients

---

(Tr. 24-25). The ALJ also cited to July 2018 notes indicating that Plaintiff "spend[t] his time doing household chores and attending classes" and "acted as a single parent while his wife was incarcerated." (Tr. 25). He also cited to a September 2020 note that "indicated that the claimant had left shoulder and neck pain after working on his car." (Tr,. 25).

who could perform those same jobs even though they required frequent changing of positions "at will." (*Id*.)

Plaintiff's counsel then asked the VE to assume that "hypothetical transition" time to accommodate cane use "would take the hypothetical claim[ant] off task for the period of that transition," and asked the VE to speculate about the impact of such "off task" time.[10] (Tr. 52-53). When the VE responded that he could not provide an answer without being provided a hypothetical percentage of off-task time, counsel suggested that the use of a cane in combination with other breaks could cause Plaintiff to be "off task" by "10% or more of any workday." (Tr. 53). The VE responded that the referenced job base would be unaffected at 10% off-task time, and would not be impacted unless the "off task" time exceeded 15% per day. (*Id*.; *see also* Tr. 54).

Having summarized all relevant evidence concerning cane use, the Court turns now to Plaintiff's closely related claims of error.

### 2. The Determination that the Cane was not Medically Necessary

Plaintiff's first claim is that the ALJ erred when he failed to find that Plaintiff's cane was a necessary medical device. In support, Plaintiff begins with a legal argument concerning the potential application of Social Security Regulation ("SSR") 96-9p, which provides guidance for the evaluation of the use of any hand-held device and the impact of that use upon sedentary work. It is worth noting that ALJ Beekman did not cite to SSR 96-9p in his decision. However, in relevant part, SSR 96-9p states:

> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant*

---

[10] In his brief before this Court, Plaintiff phrases his query somewhat differently than the record reflects. (See Doc. 11 at 9).

*information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). Thus, SSR 96-9p requires a plaintiff to produce documentation that: (1) demonstrates that a cane has been prescribed; and (2) the reasons for that prescription.

Plaintiff readily admits that he did not produce documentation that would show why/when a cane was medically necessary, but argues that SSR 96-9p applies only when a plaintiff remains capable of sedentary work. Because the ALJ in this case found him to be capable of **light** work, he argues that a prescription alone (without a description of why the cane was prescribed or the circumstances for which it was needed) was sufficient to prove medical necessity. *See Scales v. Comm'r of Soc. Sec*., Case No. 1:19-cv-03-MRB-KLL, 2020 WL 830964 at *8 (S.D. Ohio Feb. 20, 2020), adopted 2020 WL 1083638 (S.D. Ohio March 6, 2020) (suggesting that a plaintiff "need not produce the medical documentation set forth in SSR 96-9p" when the RFC is for light work rather than sedentary work).

But Plaintiff's argument is a red herring.  As stated, the ALJ did not cite to or rely upon any part of SSR 96-9p. More importantly, regulations that apply to *every case* make clear that it is Plaintiff's burden to prove his limitations, including his need for a cane. *See* 20 C.F.R. § 416.912(a)(2) ("The evidence in your case record must be complete and detailed enough to allow us to make a determination…about whether you are disabled," including the "nature and severity of your impairment(s) for any period in question."). Plaintiff has failed to show that the mere existence of a prescription for a cane (written at Plaintiff's request), without more, is sufficient in *this case* to establish that his cane is

medically necessary. Instead, the ALJ reasonably discounted Plaintiff's subjective report that he needed a cane after discussing all of the relevant evidence, including the fact that examining physicians "consistently" noted "normal gait" both before and after Plaintiff obtained his cane prescription. (Tr. 24, citing records multiple records during relevant disability period).

Plaintiff's citation to *Carreon v. Massanari*, 51 Fed. Appx. 571, 575, 2002 WL 31654581, at *2 (6th Cir. 2002) illustrates that evidence of a prescription alone is rarely (if ever) enough. In *Carreon*, the ALJ also had determined the plaintiff could perform light work notwithstanding some evidence that a cane had been prescribed. The Sixth Circuit affirmed, noting that a physician had indicated that the cane was not "obligatory" but was merely for "insurance."  In other words, the Sixth Circuit specifically cited to evidence that supported the conclusion that – prescription aside – the plaintiff had failed to prove medical necessity. *Id.* ("Because the cane was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work.").

Consistent with *Carreon*, multiple courts have found that a mere prescription for a cane is not sufficient to demonstrate that a cane is medically necessary.

> Faced with similar circumstances, courts have upheld ALJ decisions that did not include the need for a cane in a claimant's RFC. *See e.g., Golden v. Berryhill*, 2018 WL 7079506 at * 19 (N.D. Ohio Dec. 12, 2018) ("Moreover, as Dr. Balaji's confirmation of a cane prescription does not indicate 'the circumstances for which [the cane] is needed,' it does not fulfil the requirements under SSR 96-9p."); *Krieger v. Comm'r of Soc. Sec.*, 2019 WL 1146356 at * 6 (S.D. Ohio March 13, 2019) (finding ALJ did not err in not including a limitation for a cane where physician indicated claimant would need a cane but did not describe the specific circumstances for which a cane is needed as required by SSR 96-9p); *Salem v. Colvin*, 2015 WL 12732456 *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane."); *Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246 at *5 (E.D. Mich. July 21, 2017) (rejecting claimant's assertion that the ALJ failed to account for her use of a cane, stating that nothing in the

physician's "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work" (citations omitted)).

*Wright v. Saul*, 2019 WL 3729264, at *4 (N.D. Ohio, 2019).

Again, in the case presented, there was no evidence at all that would support a finding that the cane was a necessary medical device apart from Plaintiff's entirely subjective reports that he had used a cane "off and on" for the past five years for back pain. *See*, *generally*, *Rodgers-Eaches v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-69-DRC-KLL 2021 WL 164254, at *8 (S.D. Ohio, 2021), adopted at 2022 WL 190043 (S.D. Ohio Jan. 21, 2022) ("Because plaintiff has not pointed to medical documentation in the record that shows her cane was medically required, any error the ALJ committed by failing to more thoroughly evaluate plaintiff's use of a cane was harmless error."). As discussed above, the ALJ discredited Plaintiff's subjective reports of cane use as inconsistent with the objective evidence, clinical records, medical opinion evidence, and Plaintiff's own reports of his daily activities during the relevant disability period. Plaintiff does not appeal the ALJ's adverse consistency/credibility finding, and substantial evidence supports the conclusion that the cane was not medically necessary.

### 3. No Requirement to Consider the Use of a Cane in Plaintiff's RFC

The lack of any error in the ALJ's failure to find that the cane was a necessary medical device is fatal to Plaintiff's second claim that the ALJ erred by failing to consider the effect of the cane in Plaintiff's RFC. (See Doc. 11 at 9). The record provides substantial evidence to support the ALJ's assessment of Plaintiff's RFC, and Plaintiff failed to prove that he had additional limitations. S*ee Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App. 498 508 (6th Cir. 2013) ("Because the ALJ found that the evidence did not suggest that Johnson needed a cane, it was not erroneous for the ALJ to exclude this

factor in determining Johnson's RFC."); *Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."). The VE's testimony in response to a hypothetical question that accurately reflected Plaintiff's impairments constitutes substantial evidence in support of the Commissioner's decision.  *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022). Last but not least, the VE's responses to additional hypothetical questions posed by both the ALJ and Plaintiff's counsel in this case strongly suggest that any possible error was harmless. The VE clearly testified that all three jobs that could be performed by someone with Plaintiff's RFC also could be performed if the individual were limited to no more than 2 hours per day of standing/walking, with the ability to change positions "at will."  The VE also testified that such an individual could be "off task" for up to 15% of the day with no erosion of the job base, even though there was no evidence to support any "off task" limitation.

### III.  Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** the Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge